they do not appear to me materially to alter, or control those, which have been already considered. I do not say, that the interpretation of this instrument is free from all doubt. But, that, which approves itself best to my judgment, is that, which has been already stated. The opposite conclusion could not, in my judgment, be arrived at, without encountering more difficulties—some of which strike me to be almost insuperable. On the whole, therefore, I hold, that the interpretation given to the instrument at the trial was the true one, and it has not been shown to be erroneous.

For the reasons already given on the other points, as well as on this point, the motion for a new trial must be overruled, and judgment pass upon the verdict for the plaintiffs. I have the less hesitation in coming to this conclusion, because the present trial is not absolutely final; and the merits of the case may be fully considered in the bill in equity, and carried for a final decision to the supreme court.

Upon the other motion for an injunction, founded on the bill in equity, it is not necessary to say much. The injunction is asked for, upon the ground of long possession, the renewal of the patent, and the legal effect of the trial at law. In respect to the possession, the case is certainly very strong. The original patentee (Woodworth) went to his grave in full possession of it, if not undisturbed and undisputed, as to his title to the invention patented, at least without any successful impeachment of it. The patent has been renewed, since his decease, by the board of commissioners, after full examination and deliberation, in favor of his administrator. I think, too, that it was clearly established at the recent trial, that Woodworth was the true and original inventor of the machine patented, and it was so found by the jury. Indeed, the only question, upon the merits, was, whether the defendant used the patent machine, or one substantially different from it. Upon that, as a question of fact, there was a considerable conflict of evidence. But the jury found a verdict upon that point, also, for the plaintiff, and, as it appears to me, according to the preponderance of the evidence. The defendant has established no title in himself, or in any other person, to use the patented invention; and he has failed in his defence, that he did not violate it. The doctrine laid down by Lord Eldon, in Hill v. Thompson, 3 Mer. 622, is, in my judgment, the true doctrine, and is indispensable to the repose of titles, and the security of patentees. It is this,—that where a patent has been granted, and an exclusive possession, of some duration, under it, the court will interpose its injunction, without putting the patentee previously to establish the validity of his patent by an action at law. But where the patent is but of yesterday (meaning, that it is recent), and upon an application being made for an injunction, it is endeavored to be shown, in opposition to it, that there is no good specification,—

or otherwise, that the patent ought not to have been granted, the court will not, upon its own notions, respecting the matter in dispute, act upon the presumed validity or invalidity of the patent, without the right having been ascertained, by a previous trial at law; and will send the patentee to law, and oblige him to establish the validity of his patent, in a court of law, before it will grant him the benefit of an injunction. Correctly considered, there is nothing in Lord Cottenham's judgment, in Collard v. Allison, 4 Mylne & C. 487, which in any manner impugns or shakes this doctrine. In that case, a new trial at law had been granted, and therefore his lordship held the legal title of the parties, as still undecided. I have, myself, in former cases, adopted Lord Eldon's doctrine, and, especially, in the case of Ames's paper manufacturing patent, which was, at the time, most strenuously contested upon various grounds, and, especially, upon the ground, that the invention was not new. Yet the jury having, after a great conflict of evidence, established the validity of Ames's patent, an injunction was granted. I shall, therefore, direct an injunction to issue, and to remain, until the hearing of the cause, or the further order of the court.

[For other cases involving this patent, see note to Bickness v. Todd. Case No. 1,389.]

WASHBURN (NEEDHAM v.). See Case No. 10,082.

WASHBURN v. PENNSYLVANIA INS. CO. See Case No. 17,212.

## Case No. 17,215.

### WASHBURN v. UNION FIRE INS. CO.

[Detroit Post and Tribune. Nov. 8, 1879.]

Circuit Court, E. D. Michigan. Nov. 7, 1879.

FIRE INSURANCE—CAUSE OF LOSS—EXPLOSION AT FIRE.

The case of C. C. Washburn against the Union Fire Insurance Company in the United States circuit court yesterday resulted in a verdict for the Washburn Mills at Minneapolis, destroyed by an explosion nearly two years ago. There was a clause in the policy exempting the company from liability from loss by explosion. Plaintiff claimed that the mills were on fire before the explosion, and that the explosion was caused by fire. Judge BROWN submitted to the jury the question whether or not fire other than the ordinary fires or lights in the mill caused the explosion. They found that there was such fire, and that therefore the exemption in the policy did not apply. There were some 80 policies on the mills and contents, and other suits are pending.

[Cited in Washburn v. Miami Valley Ins. Co., 2 Fed. 639.]

[This was an action by Cadwallader C. Washburn against the Union Fire Insurance Company on a policy of insurance. The trial resulted in a verdict for plaintiff for $1,650.50. No opinion filed.]